## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Sean Cronin,

               Plaintiff,

v.

Sanuwave Health, Inc.,

               Defendant.

_____

Case No. 23-cv-1295 (SRN/ECW)

**ORDER**

This matter comes before the Court on Defendant Sanuwave Health, Inc.'s Motion for Discovery Sanctions (Dkt. 58).  For the reasons stated below, the Motion is granted in part and denied in part.

## I.        BACKGROUND

On May 10, 2023, Plaintiffs John Garrettson and Timothy Fitzgerald initiated this action by filing a Complaint against Defendant Sanuwave Health, Inc. ("Sanuwave") seeking "to recover damages for unpaid commissions they are owed" and "for wrongful termination."  (Dkt. 1 at 1.)[1]  On July 5, 2023, they filed an Amended Complaint adding Sean Cronin as a Plaintiff.  (Dkt. 12.)

On October 16, 2023, the Court issued a Pretrial Scheduling Order setting the following relevant deadlines: fact discovery had to be commenced in time to be completed on or before May 1, 2024 and "all non-dispositive motions and supporting

---

[1]        Unless otherwise noted, page number citations to materials filed on the docket are citations to the CM/ECF pagination.

documents" relating to fact discovery had to be filed and served on or before May 15, 2024. (Dkt. 32 at 3, 5.) The Pretrial Scheduling Order limited each party to no more than 5 factual depositions. (*Id*. at 3.)

On October 31, 2023, the Court stayed the case with respect to Garrettson and Fitzgerald because they reported reaching an agreement in principle to resolve their claims against Sanuwave. (Dkts. 34, 36.) Garrettson and Fitzgerald filed a stipulation of dismissal with prejudice on July 3, 2024, and U.S. District Judge Susan Richard Nelson dismissed those claims on July 8, 2024. (Dkts. 104, 106.)

Meanwhile, on March 14, 2024, the Court issued a Protective Order based on the parties' stipulation. (Dkts. 44, 46.) The Protective Order provides in relevant part:

¶ 2(b) "A party or non-party may designate a document as confidential by conspicuously marking each page with the word 'confidential.'"

…

¶ 3(c) "A party or non-party may supplement the "confidential" mark (see paragraph 2(b)) with the words "attorney's eyes only," in which case a confidential document so designated may not be revealed except to the attorney or attorney's [sic] who received the production. For avoidance of doubt, such attorneys may not share the document with any client without first obtaining written permission of the producing party or an order by the Court.

…

¶ 7(a) "A confidential document disclosed or produced by a party remains confidential unless the parties agree to change its designation or the court orders otherwise."

…

¶ 7(c) "A party who cannot obtain agreement to change a designation may move the court for an order changing the designation. . . . The party or non-

party who designated a document as confidential must show that the designation satisfies Fed. R. Civ. P. 26(c)."

…

¶ 9(a)(2) "A party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party or non-party."

¶ 9(b) "Handling of Protected Document. A party who is notified or discovers that it may have received a protected document must comply with Fed. R. Civ. P. 26(b)(5)(B)."

…

¶ 10(b) "A party who learns of a breach of confidentiality must promptly notify the disclosing or producing party or non-party of the scope and nature of that breach and make reasonable efforts to remedy the breach."

(Dkt. 46.)

On April 30, 2024, the Court extended the deadline to complete fact depositions from May 1, 2024 until May 15, 2024, based on a stipulation filed by Cronin and Sanuwave. (Dkts. 52, 53.)

On May 15, 2024, Sanuwave filed the instant Motion for Discovery Sanctions along with its supporting papers. (Dkts. 58-63.) Also on May 15, 2024, Cronin filed a Motion to Compel, Extend Discovery Deadlines, and for Sanctions (Dkt. 64) and a Motion for International Judicial Assistance (Letters Rogatory) and Motion for Extension of Discovery (Dkt. 65). However, Cronin filed most of his papers in support of his two Motions late, on May 16 and 17, 2024.[2] (*See, e.g.*, Dkts. 68-77.) On June 13, 2024, the

---

[2]    Cronin's brief and proposed order in support of his Motion to Compel were filed shortly after midnight on May 16, 2024. (Dkts. 66-67.) The remainder of his untimely

Court heard argument on Sanuwave's Motion, as well as on Cronin's Motions.  (Dkt. 96 (minute entry).)  At the conclusion of the June 13 hearing, the Court issued oral orders on Plaintiff's Motions (Dkts. 64, 65).  (*See id.*)  The Court took Sanuwave's Motion for Discovery Sanctions under advisement and now issues this Order on the Motion.

## II.        DISCUSSION

Sanuwave seeks sanctions under Rule 37(b)(2) of the Federal Rules of Civil Procedure and pursuant to the Court's inherent authority.  (Dkt. 58; Dkt. 59 at 7.) Sanuwave seeks sanctions for the following reasons.  Sanuwave asserts that "Mr. Cronin, through his counsel, has . . . accessed and reviewed Sanuwave's proprietary information marked 'Attorneys Eyes Only' in violation of the parties' Protective Order."  (Dkt. 60 at 1.)  Sanuwave asserts that the same lawyer, Matthias Kaseorg of Pierce Jewett, PLLC ("Cronin's counsel"), "has served a third-party subpoena duces tecum on Sanuwave's former Chief Revenue Officer without providing advanced notice to Sanuwave or its counsel as required by Federal Rule of Civil Procedure 45, and has engaged in blatant acts of dishonesty thereafter."  (*Id.*)  Sanuwave also asserts that Cronin's counsel violated the Protective Order with respect to this subpoena because it was not served with a copy of the Protective Order and Local Rule 5.6.  (*Id.* at 10.)  Sanuwave also seeks its "fees and costs incurred in remedying the aforementioned discovery violations pursuant to Rule 37(b)(2)(C)."  (*Id.* at 13.)

---

filings began at 11:55 a.m. Central Time on May 16, 2024 (*see* Dkt. 68).  The Court focuses on the filings beginning at 11:55 a.m. on May 16 for purposes of untimeliness.

A.     **Legal Standard**

Sanuwave seeks sanctions under (1) Rule 37(b)(2) of the Federal Rules of Civil Procedure and (2) the Court's inherent authority.  (Dkt. 58; Dkt. 59 at 7.)  The Court sets forth the legal standard for each basis below.

As to Rule 37(b)(2), "Rule 37(b) of the Federal Rules of Civil Procedure provides for sanctions for the violation of discovery orders, which include protective orders issued under Federal Rule of Civil Procedure 26(c)."  *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 264 (D. Minn. 2007).  Sanctions available for violation of a discovery order under Rule 37(b)(2) include:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).  "The district court has 'a large measure of discretion in deciding what sanctions are appropriate for misconduct.'"  *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. CIV. 09-1091JNE/JSM, 2013 WL 449775, at *16 (D.

Minn. Jan. 8, 2013) (quoting *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997)), *R. & R. adopted*, 2013 WL 449838 (D. Minn. Feb. 6, 2013). "It is not a requirement that the party 'willfully' refuse to obey the Court's discovery order" to award sanctions under this Rule. *Card Tech. Corp. v. DataCard Inc.*, 249 F.R.D. 567, 570 (D. Minn. 2008). "The willfulness or good faith of the party can hardly affect the fact of noncompliance and are only relevant to the path which the District Court might follow in dealing with the party's failure to comply." *Id.* (quoting *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958)) (cleaned up). However, "the most severe Rule 37(b)(2) sanctions—dismissal, default judgment, and striking pleadings in whole or in part— require a finding of willfulness to avoid being deemed an abuse of discretion." *Id.* at 571.

As to fees and costs, Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to" the sanctions permitted under Rule 37(b)(2)(A), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

With respect to the Court's inherent authority, "[t]he court has power to discipline attorneys who appear before it." *Greiner v. City of Champlin*, 152 F.3d 787, 790 (8th Cir. 1998) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32501 U.S. 32, 43 (1991); *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir.), *cert. denied*, 510 U.S. 828 (1993)). Such "inherent powers must be exercised with restraint and discretion, as "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which

abuses the judicial process." *Chambers*, 501 U.S. at 44-45 (citation omitted). "Sanctions imposed pursuant to the court's inherent power are permitted where a litigant acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Mgmt. Registry, Inc. v. A.W. Cos, Inc.*, No. 17-CV-5009 (JRT/KMM), 2020 WL 1910589, at *20 (D. Minn. Apr. 20, 2020) (cleaned up), *R. & R. adopted*, No. CV 17-5009 (JRT/KMM), 2020 WL 4915832 (D. Minn. Aug. 21, 2020), *as amended* (Aug. 27, 2020). A court's inherent authority permits it to "assess attorney's fees as a sanction for the willful disobedience of a court order." *Chambers*, 501 U.S. at 45 (cleaned up). However, "[t]he Eighth Circuit has held that there is not a bad faith requirement that extends to every disciplinary action the court makes [pursuant to its inherent authority], such as monetary sanctions." *VanDanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1055 (D. Minn. 2000) (citing *Harlan v. Lewis*, 982 F.2d 1255 1260 (8th Cir. 1993)); *see In re Baycol Prod. Litig.*, No. MDL 1431 (MJD/JGL), 2004 WL 1052968, at *17 (D. Minn. Apr. 12, 2004) (citing *VanDanacker* to conclude that a finding of bad faith was not required before the court could impose monetary sanctions under its inherent authority).

## B. Disclosure of Attorney's Eyes Only Information to Cronin in Violation of the Protective Order

Sanuwave first seeks sanctions on the ground that Cronin and his attorney violated the Protective Order's restrictions on disclosure of Attorney's Eyes Only information because Cronin's counsel provided Attorney's Eyes Only information to Cronin. (Dkt. 59 at 3-8.) The relevant facts (set forth below) are not in dispute.

The Court entered a Protective Order on March 14, 2024 prohibiting an attorney from sharing a document designated "Attorney's Eyes Only" with anyone except the attorney who received the production, and specifically prohibiting sharing of a document so designated "with any client without first obtaining written permission of the producing party or an order by the Court." (Dkt. 46 ¶ 3(c).) In April 2024, Sanuwave produced emails exchanged between members of its finance team from October 2022 to January 2023, where the emails contained spreadsheets of data (also referred to as "datasets") showing the sales that were used to form the basis of Cronin's monthly commission. (Dkt. 60 at 5; *see also* Dkt. 61 ¶¶ 7-8 (describing slip sheets and cover email for documents); Dkt. 61-1, Ex. 6 at 49-62 (slip sheets).) Sanuwave states that "the datasets contained customer names, product names, and pricing information," and because of the sensitivity of that information, it "marked both the emails and the attached spreadsheets 'Attorneys Eyes Only' and produced them." (*Id.*) Sanuwave produced the datasets—17 in total—in their native format using Relativity e-discovery software, with each native Excel file accompanied by a slip sheet in the form of an image file that read "FILE PRODUCED NATIVELY" in the middle of the slipsheet and where that slip sheet had the same bates label as the corresponding native Excel file in the lower right-hand corner and stated "Confidential – Attorneys' Eyes Only" in the lower left-hand corner. (Dkt. 61-1, Ex. 6 at 51-65; Dkt. 60 at 5-6.) The cover email to Sanuwave's production stated: "Please note there are documents in this production labeled Attorneys Eyes Only under the parties' Protective Order." (Dkt. 61-1, Ex. 7 at 67.)

On April 11, 2024, Cronin's counsel reviewed the production. (*See* Dkt. 86 at 6.) Because Pierce Jewett does not use Relativity or any e-discovery software, Cronin's counsel reviewed the production as a "discovery folder" on his computer.[3] (*See id.* at 7.) The Court reproduces a screenshot of this folder below (*see id.*):



---

Cronin's counsel represented at the June 13 hearing that his firm does not use Relativity or any e-discovery software and that his firm does all of its discovery production and receipt through native file management and file structures. The Court takes no position on whether a law firm should use e-discovery software, but the fact that a firm does not use such software is not an excuse for failing to review documents in a manner that ensures compliance with the Protective Order.

As shown above, the production contained an "IMAGES" folder, a "NATIVES" folder, and a "TEXT" folder. The "NATIVES" folder had a single subfolder (NATIVE0001) which contained 17 files—the Excel spreadsheets at issue. (*See* Dkt. 86 at 7 (screen shot).) Each native file was identified by bates number in its filename. (*Id.*)

On April 11, 2024, Cronin's counsel sent an email to Sanuwave's counsel asking, "Can you please provide a listing of documents you are marking as attorneys' eyes only?" (Dkt. 88-7 at 1.) Sanuwave's counsel did not respond to this email. However, Sanuwave's counsel stated at the hearing that she suggested they meet and confer with respect to several emails Cronin's counsel had sent about the production, and Cronin's counsel did not ask for the listing during that meet-and-confer. Cronin's counsel accepted Sanuwave's counsel's representation that they did not discuss which documents were designated Attorney's Eyes Only during that meet-and-confer, but disputed whether the meet-and-confer was intended to cover the identification of the Attorney's Eyes Only documents.

On April 30, 2024, Sanuwave deposed Cronin, at which time Sanuwave realized that Cronin had reviewed Sanuwave's Attorney's Eyes Only datasets. (Dkt. 60 at 6.) Cronin's review of these datasets is not disputed, as Cronin's counsel later confirmed his review by email, stating:

> Okay. This is why I asked for a list of documents that were Attorney s Eyes Only (see attached) when we first received the production set, to which I didn't receive a response. The spreadsheets themselves in the NATIVE folder, which is what I was accessing, did not have any such designation on them. I made those spreadsheets in native format available to my client. We even had conversations about Sean's review and analysis of the data in the new spreadsheets. I would strenuously object to the placing of an attorneys

eyes only label on spreadsheets that are material to my client assessing his damages.

For now, I will revoke access to those spreadsheets and instruct my client to remove any copies he may have (I don't believe he has any).

(Dkt. 61-1, Ex. 8 at 69.)

Sanuwave now seeks sanctions on the ground that Cronin and Cronin's counsel violated the Protective Order because Cronin's counsel gave Cronin access to these Attorney's Eyes Only spreadsheets.  (Dkt. 60 at 7.)  Cronin makes three arguments why he should not be sanctioned.

First, as a threshold matter, Cronin argues that there was no "actual violation of the Protective Order" that would qualify under Rule 37(b)(2)(A) because the Attorney's Eyes Only designation "appears on a separate cover page, but appears **nowhere** within the file name or actual files containing the purportedly confidential information."  (Dkt. 86 at 17.)  The Court finds this argument unpersuasive.  The Protective Order provides that a party "**may** designate a document as confidential by conspicuously marking each page with the word 'confidential.'"  (Dkt. 46 ¶ 2(b) (emphasis added).)  The Protective Order does not state that the **only** way a party may designate a document as confidential is by marking each page.  If the Court were to accept Cronin's position that "each page" of a document must be marked or else the Protective Order is unenforceable, there would be no way for a native file (such as an Excel spreadsheet or source code) to fall within the scope of the Protective Order.  It is unclear how one would even mark "each page" of an

Excel spreadsheet, and doing so would alter the native file itself.[4]  Indeed, Cronin's

suggestion that Sanuwave should have included the Attorney's Eyes Only designation in

"the file name" (*see* Dkt. 86 at 17) undermines his argument that there was no "actual

violation" of the Protective Order, as the Protective Order does not specifically identify

marking a file name as a manner of designation.

Here, it is undisputed that the slip sheets for the native files were marked as

"Confidential – Attorneys' Eyes Only" and that the slip sheets corresponded by bates

number to the native files.  (*See* Dkt. 61-1 at 51-65 (showing slip sheets); Dkt. 86 at 7

(showing folders with file names).)  The Court finds that Sanuwave's designation of the

Excel spreadsheets as "Confidential – Attorneys' Eyes Only" by adding that designation

to each bates-numbered slip sheet corresponding to the bates-numbered native file meets

the designation requirements of the Protective Order and that Cronin's counsel's

provision of the spreadsheets to Cronin constituted a "fail[ure] to obey an order" (the

Protective Order) within the scope of Rule 37(b)(2)(A).  This leaves the Court with the

question of an appropriate sanction under that Rule.

The Court therefore addresses Cronin's other arguments why sanctions should not

be imposed.  Cronin's second argument is that sanctions are inappropriate because his

lawyer's disclosure of the spreadsheets was "inadvertent, immediately remedied, and did

not result in prejudice."  (Dkt. 86 at 17 (emphases removed); *see also id.* at 17-20

---

[4]     Cronin's First Requests for Production instruct that "documents originating in
electronic form . . . be produced in the manner that they were stored in the ordinary
course of business . . . in native or near-native form," where Excel spreadsheets should be
produced as .XLS or .XLSX format.  (Dkt. 66-3 at 5 ¶ 9.)

(expanding on arguments).)  As to prejudice, Cronin argues "Defendant has failed to identify a single material record from the Contested Spreadsheets that was not already available from the Cronin Salesforce Spreadsheet or the Mediation Spreadsheet, let alone a single piece of material information that Cronin did not already have access to at work." (Dkt. 86 at 19.)  As explained by another court in this District, this type of argument "depends on a limited and inaccurate view that the only harm at issue would result from the publication of sensitive information the confidential documents might contain." *United States ex rel. Johnson v. Golden Gate Nat. Sr. Care, L.L.C.*, No. CIV. 08-1194 DWF/JJK, 2013 WL 1182905, at *7 (D. Minn. Mar. 21, 2013).  The *Golden Gate* court reasoned:

> Although that type of harm may not be present in these circumstances, the harm here is of a different, but equally important character.  Like other parties that produce information in reliance on a protective order, [the producing party] relied on the Protective Order in this case in disclosing [the information designated as confidential]. When an opponent ignores its obligations in handling information it receives under a protective order, the producing party's confidence that its sensitive information will be safeguarded erodes. The Court's confidence that its orders will be followed erodes as well. That erosion of confidence changes the landscape of the discovery process for the producing party and the Court's expectations that litigation can be effectively managed, and there lies the harm.

*Id.*

The Court agrees with *Golden Gate*'s reasoning.  Cronin's counsel's conduct with respect to the Attorney's Eyes Only spreadsheets raises serious concerns about whether counsel can be relied on to follow the Court's Orders.  Cronin's counsel admitted at the hearing that he knew from the production cover email that the production contained Attorney's Eyes Only documents.  Cronin's counsel initially stated that he did look at the

image files for the documents that had been produced natively and for documents that had not been produced natively. He then stated that he first reviewed the natively produced documents (the spreadsheets) and, while he may have scrolled through an associated image file after reviewing a native file at some point, he could not say for sure if he did. Cronin's counsel's statement that he did review the slip sheets and subsequent statement that he did not review (or could not be sure that he reviewed) the associated slip sheets, are difficult to square. Either counsel reviewed the slip sheets or he did not. In any event, Cronin's counsel did not dispute that if he had looked at the slip sheets, he would have seen the Attorney's Eyes Only designation.

Counsel's explanation for why he provided the spreadsheets to Cronin knowing they came from a production containing Attorney's Eyes Only documents was that the discovery timeline was compressed and Sanuwave's counsel was asking for specifics about so-called "misaligned" sales. According to Cronin:

> Plaintiff's position had been that more information would be required to fully assess the [misalignment] discrepancies given the lack of meaningful information within the Contested Spreadsheets. Defendant's position was that it needed more information about the misaligned sales before it would provide additional documents. Plaintiff took this to mean that Defendant was requesting Mr. Cronin to compare the two sets of documents to provide his best attempt at identifying misaligned sales. *See* **Exhibit H** at 16.

(Dkt. 86 at 18.)

But Exhibit H (filed at both Dkt. 86-9 and Dkt. 88-8) contains no language suggesting Sanuwave was asking Cronin to personally review the spreadsheets or agreed that Cronin could personally review Attorney's Eyes Only documents. Cronin also relies on Sanuwave's April 1, 2024 interrogatory answers and April 26, 2024 interrogatory

answers to support this argument.  (*Id.* (citing Exhibit F at Pages 10-16 and Exhibit I at 11-18).)  Those interrogatory answers (Dkts. 86-7 and 88-6 (Exhibit F) and Dkts. 86-10 and 88-9 (Exhibit I)) refer to and summarize one of the datasets at issue, but do not contain any request that Cronin personally review that dataset.

Counsel further stated at the hearing that he provided the spreadsheets to Cronin because the native spreadsheets themselves (and their filenames) didn't contain an Attorney's Eyes Only designation and blames Sanuwave's counsel for not responding to his email asking for a list of the documents that were designated Attorney's Eyes Only. But Cronin's counsel did not further investigate which of the produced documents he could give to his client.  He did not follow up with Sanuwave and he (apparently) did not review the image files constituting the slip sheets corresponding to the 17 native files, which, given there were only 17 native files, would hardly have been a difficult or time-consuming task.  None of these explanations inspire confidence that counsel will follow the Court's Orders, including the Protective Order, or that counsel takes compliance with the Protective Order seriously.  This conduct prejudices Sanuwave, which cannot rely on the Protective Order when producing sensitive materials, and also prejudices the judicial process, which depends on parties and attorneys complying with the Court's Orders.

Further, Sanuwave asserts prejudice because the spreadsheets contain sensitive financial information and Cronin now works at a Sanuwave competitor.  (*See* Dkt. 60 at 3.)  Cronin responds by asserting that the spreadsheets do not contain any more confidential information than other information he already has, the so-called "Cronin Salesforce Spreadsheets" and a "Mediation Spreadsheet."  (Dkt. 86 at 19.)  Cronin did

not file those documents (Dkt. 86 at 2-3 ¶ 3, 5 ¶ 10), and the Court declines to rely on documents not before it to find a lack of prejudice. Moreover, Cronin's counsel's explanation for why he did not file these documents is troubling. Cronin's brief states he did not file these documents because Sanuwave asserted the Cronin Salesforce Spreadsheets are confidential and the Mediation Spreadsheet is designated Attorney's Eyes Only. (Dkt. 86 at 2-3 ¶ 3, 5 ¶ 10.) Instead, the brief offers to make the documents available "upon request" for the Court. (*Id.*) At the hearing, the Court explained to Cronin's counsel that he should have filed the documents under seal and the Court would not "request" documents that a party should have filed. Indeed, Cronin has filed other documents under seal. (*E.g.*, Dkts. 69, 87.) Cronin's counsel responded that Sanuwave's counsel had told him by email that he could not use the Attorney's Eyes Only documents in any filing.

Concerned about this possibility, after the June 13 hearing, the Court ordered Cronin's counsel to file the Sanuwave email at issue. (Dkt. 97.) He did so (Dkt. 98-1), but the Sanuwave email does not say what Cronin's counsel told the Court it says. The email says: "Sanuwave's position is certainly that AEO documents cannot be **publicly** filed." (*Id.* at 1 (emphasis added).) The cover letter filed with the Sanuwave email (a letter that the Court neither requested nor authorized) offers several explanations for Cronin's counsel's conduct, including a purported misunderstanding of the Protective Order. (*See* Dkt. 98.) Those explanations do not justify Cronin's counsel's misstatement to the Court that Sanuwave told him he could not use those documents in any filing. The Court cannot emphasize enough how important it is that counsel be careful, accurate, and

truthful in their representations to the Court at all times.  If Sanuwave had in fact told counsel that he could not file Attorney's Eyes Only documents, that would be troubling indeed.  But what Sanuwave said is that Cronin could not "publicly" file such documents. (Dkt. 98-1 at 1.)  Cronin's counsel's failure to understand the Protective Order and Local Rule 5.6 (and apparent failure to ask local counsel for guidance on this issue) does not excuse his statement to the Court during the June 13 hearing blaming Sanuwave's counsel for his failure to file documents supporting his brief.

In any event, Cronin's argument that there is no prejudice because the Attorney's Eyes Only spreadsheets do not contain any more confidential information than the Cronin Salesforce Spreadsheets and Mediation Spreadsheet is unpersuasive.  At the June 13 hearing, Cronin argued that he needed the Attorney's Eyes Only spreadsheets to address "misalignment" issues and for damages purposes.  Cronin has not explained why, if the Attorney's Eyes Only spreadsheets truly contain less information than Cronin already has, he needs those spreadsheets.  The Court concludes that the Attorney's Eyes Only spreadsheets contain information that is different from or more detailed than what Cronin already has and therefore that their disclosure was prejudicial given Cronin now works for a Sanuwave competitor.

The Court also finds that the disclosure of Sanuwave's Attorney's Eyes Only spreadsheets to Cronin was not "inadvertent."  As described above, counsel knew the 17 spreadsheets were part of a production that contained Attorney's Eyes Only documents. Counsel's decision to bury his head in the sand as to this fact rather than reviewing the associated slip sheets or following up with Sanuwave does not make his conduct

17

inadvertent.  Rather, it suggests an intent to dodge limitations imposed by the Protective Order when expedient.

The Court is similarly unpersuaded that it should ignore the violation because it was "immediately remedied."  Setting aside the question of whether Cronin remembers any of the information he reviewed, the fact that counsel cut off Cronin's access to the documents does not cure the Court's concern as to counsel's intent and ability to comply with the Court's Orders.

Third, Cronin argues that he should not be sanctioned because the Attorney's Eyes Only designation is inappropriate or has already been waived.  (Dkt. 86 at 21-22.)  The Protective Order provides: "A confidential document disclosed or produced by a party remains confidential unless the parties agree to change its designation or the court orders otherwise" and sets forth the mechanism for challenging designations by seeking relief from the Court.  (Dkt. 46 at 5 ¶ 7(a), (c).)  A party cannot avoid sanctions for violating a Protective Order by making such after-the-fact arguments.  In fact, Cronin's reliance on these arguments causes concern that counsel violated the Protective Order not for the reasons proffered to the Court, but because counsel simply disagreed with Sanuwave's designation.  *See Golden Gate*, 2013 WL 1182905, at *7 ("[T]he attempt to argue that these documents should never have been marked confidential in the first place leads the Court to question whether Defendants decided for themselves that Johnson's personnel file did not deserve to be treated as confidential and then embarked on a plan to use that information in whatever advantageous manner they could . . ."); *see also Mgmt. Registry*, 2019 WL 5388488, at *7 (concluding that the disclosure of testimony designated AEO

18

was sanctionable where counsel never "raised the propriety of the confidentiality or AEO designations" with the producing party or the court before the producing party sought sanctions).

As to inherent authority, at the June 13 hearing, the Court asked counsel for Cronin if he was taking the position that if someone sent him a document with a cover email that said the document was Attorney's Eyes Only, he could show it to his client without violating the Protective Order even though he knew the cover letter said that the document was Attorney's Eyes Only. Counsel responded that doing so would be within the Court's "general sanction power." That is basically what happened here. Counsel knew the production contained documents designated Attorney's Eyes Only based on the cover email. The image files for the 17 spreadsheets said "DOCUMENT PRODUCED NATIVELY" and contained the Attorney's Eyes Only designation and the bates number. There were only 17 natively produced files. Those 17 files contained the bates numbers in their filenames. But somehow, counsel concluded that Sanuwave's natively produced sales spreadsheets were not designated at all under the Protective Order, and apparently believed that he did not even need to look at the corresponding image files to check. Cronin's counsel's conduct with respect to the Attorney's Eyes Only spreadsheets warrants an award of attorney's fees under Rule 37, as discussed in Section II.D below. His conduct causes grave concern that counsel will act with a similar lack of care with respect to the handling of Confidential and Attorney's Eyes Only material going forward.

C.  **Violation of the Federal Rules and the Protective Order Relating to a Third-Party Subpoena**

Sanuwave also seeks sanctions because Cronin's counsel violated Federal Rule of Civil Procedure 45 in connection with a third-party subpoena to Jack Schlechtweg, Sanuwave's former Chief Revenue Officer.  (Dkt. 60 at 8-13.)  Sanuwave also alleges that Cronin's counsel backdated documents and told Sanuwave's counsel that he had not subpoenaed Schlechtweg when in fact he had done so days earlier.  (*Id.*)  Finally, Sanuwave alleges that Cronin violated the Protective Order because he did not simultaneously serve a copy of the Protective Order and Local Rule 5.6 with the subpoena at issue.  (*Id.* at 10.)

As stated above, the Pretrial Scheduling Order provided that the discovery period closed on May 1, 2024 and allowed each party to take 5 depositions.  (Dkt. 32 at 3, 5.)  On April 8, 2024, Cronin's counsel sent an email to Sanuwave's counsel seeking deposition dates for 7 individuals, including Schlechtweg and another former Sanuwave employee, and a Sanuwave corporate representative (a total of 8 depositions).  (Dkt. 61-1, Ex. 9 at 74; Dkt. 88-17, Ex. Q at 20; Dkt. 60 at 9.)  The email asked for the last known addresses of any of the individuals who were no longer employed by Sanuwave or if Sanuwave could not secure their attendance at a deposition, and stated Cronin's counsel's belief that Schlechtweg was no longer working for Sanuwave.  (Dkt. 61-1, Ex. 9 at 74; Dkt. 88-17, Ex. Q at 20.)

On April 16, 2024, after some correspondence between counsel regarding the schedule and deposition limits, Cronin served deposition notices on Sanuwave with a

cover email stating: "Please see the attached deposition notices as discussed below.  Per Defendant's Rule 26 disclosures, where it was represented that these individuals can be contacted through counsel for Sanuwave, we trust that these notices are sufficient.  Please provide updated addresses if a subpoena is required."  (Dkt. 88-17, Ex. Q at 14; *see also id.* at 15-20 (discussion regarding schedule and limits).)  On April 17, 2024, Sanuwave's counsel responded: "[A]s you have already noted, Jack Schlechtweg . . . [is] no longer [a] Sanuwave employee[] and you will need to subpoena [him] for [a] deposition[]."  (Dkt. 88-17, Ex. Q at 14.)  The same day, Cronin's counsel responded: "We'll subpoena [Schlechtweg]. . . , but you'll need to update your initial disclosures with last known addresses and contact information – it currently states that [Schlechtweg]. . . can be contacted via defendant's counsel."  (Dkt. 88-17, Ex. Q at 13-14.)  Sanuwave's counsel responded less than 2 hours later that she would "look into the last known addresses for Mr. Schlechtweg."  (Dkt. 88-17, Ex. Q at 13.)  Cronin later reduced his sought-after depositions to the limit of 5 and the parties agreed to extend discovery for the purpose of the depositions until May 15, 2024.  (Dkt 88-17, Ex. Q at 14; *see also* Dkts. 52, 53 (Stipulation and Order approving Stipulation).)

On April 17, 2024, Cronin served two Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, issued out of the District of Minnesota, on two Florida entities ("the Florida subpoenas").  (Dkts. 88-14, Ex. N.)[5]  They sought: "All sales documents and contracts with Sanuwave, Inc.,

---

[5]      Cronin's brief refers to both "an earlier subpoena duces tecum" and "two subpoenas" served on the two Florida entities.  (*E.g.*, Dkt. 86 at 14 ¶ 31 ("an earlier

and all correspondences with Sanuwave sales representatives, including but not limited to John 'Jack' Schlechtweg." (*Id.*) Cronin notified Sanuwave's counsel of the Florida subpoenas and provided copies to Sanuwave. (Dkt. 86 at 12.)

Two days later, on April 19, 2024, Sanuwave's counsel provided the last known address for Schlechtweg. (Dkt. 66-10, Ex. J at 1.) On April 30, 2024, Cronin's counsel issued a Subpoena to Testify at a Deposition in a Civil Action from the Eastern District of Virginia to Schlechtweg ("April 30 Subpoena"). (Dkt. 61-1, Ex. 13 at 95-97.) While titled a Subpoena to Testify at a Deposition, the April 30 Subpoena also requested the production of: "All sales documents and contracts with Sanuwave, Inc., and all correspondences with sales representatives, including but not limited to John 'Jack' Schlechtweg." (*Id.* at 95.) An Affidavit of Service, signed on May 5, 2024, states that a process server completed personal service on Schlechtweg on May 1, 2024 at 3:05 pm EDT. (*Id.* at 98.)

On May 2, 2024, counsel engaged in the following exchange relating to Schlechtweg, beginning when Sanuwave's counsel sent an email containing the following requests to Cronin's counsel:

> Third Party Subpoena Documents. You have issued third-party subpoenas to two of Sanuwave's clients. On April 23, 2024, you indicated you had received responsive correspondence from those parties. As you know, Sanuwave's Request Number 18 seeks "All documents received from any non-party in discovery[.]" I have asked you to produce those documents on

---

subpoena duces tecum that was served on the two Florida entities"); *id.* 15 ¶ 35 ("the two subpoenas issued to the Florida entities"); *id.* at 25 ("an earlier subpoena duces tecum that was served on the two Florida entities"); *id.* at 27 ("the two subpoenas issued to the Florida entities").) Exhibit N, which constitutes the subpoenas, includes four copies of subpoenas, two with returns of service. (Dkt. 88-14.)

April 23, April 26, and April 29, and you have not provided them, notwithstanding having made multiple supplemental productions in the interim (though, admittedly, your last set of document productions continue to remain inaccessible to our team). You have provided no explanation for why these documents have not been produced notwithstanding minimal burden and multiple requests.

Third Party Depositions. Please confirm whether you have issued, or intend to issue, subpoenas for the depositions of Jack Schlechtweg and [another former Sanuwave employee]. We have received no notice of issuance of said subpoenas.

(Dkt. 88-16, Ex. P at 4-6.)

Cronin's counsel responded:

Third Party Subpoena Documents.
See attached. We received a broken link to another letter or document of some kind, but have not yet received a corrected link. I will provide that document as soon as we are able to access it.

Third Party Depositions.
[A paralegal at Cronin's counsel's firm] will forward you these requests.

(*Id.* at 3.)

Sanuwave's counsel responded: "To be clear, have you issued other third-party subpoenas aside from the two that were noticed?  If so, please provide those immediately."  (*Id.* at 2-3.)  Cronin's counsel responded: "We have not."  (*Id.* at 2.)

But Cronin's counsel did not send the April 30 Subpoena to Sanuwave's counsel. Instead, the paralegal emailed a Notice of Deposition for Schlechtweg to Sanuwave's counsel with a deposition date of May 15, 2024.  (Dkt. 61-1, Ex. 11 at 81-83.)  The Notice of Deposition did not mention the April 30 Subpoena.  (*See id.*)  It was signed by Sanuwave's counsel with a date of April 29, 2024 and included a certificate of service stating it had been served on Sanuwave's counsel on April 29, 2024.  (*Id.* at 83-85.)

Sanuwave's counsel responded within an hour by saying, "Please correct it to properly reflect that it was not served on me on April 29," and the paralegal then served a Notice of Deposition (that did not reference the April 30 Subpoena) with a May 2, 2024 signature date and including a certificate of service with a May 2, 2024 service date. (*Id.*, Ex. 12 at 87-89.)

> Sanuwave represents that on May 3, 2024 the parties met and conferred:
>
> during which Mr. Kaseorg represented that Mr. Schlechtweg had been served with a subpoena days prior (despite his representations to the contrary), that he had already spoken with Mr. Schlechtweg by phone and by text, that Mr. Schlechtweg was not available for his deposition on May 15, 2024 as noticed, but that he could either be available in the evening of May 7, 2024 (in two business days' time) or weeks following the close of the discovery period. The undersigned asked that all correspondence with Mr. Schlechtweg, a copy of the subpoena, and the affidavit of service be forwarded immediately.

(Dkt. 60 at 9-10.)

Sanuwave's counsel sent a follow-up email on May 3, 2024 requesting "all correspondence relating to this subpoena, including the proof of service." (Dkt. 61-1, Ex. 13 at 94.) On May 6, 2024, the paralegal sent the April 30 Subpoena and the Proof of Service to Sanuwave's counsel. (*Id.* at 93).

> Based on these facts, Sanuwave argues the following:
>
> [The April 30 Subpoena] violated Rule 45(a)(2) in that it was issued from the Eastern District of Virginia and not the District of Minnesota. It violated Rule 45(a)(4) in that it was a subpoena duces tecum with no advanced notice provided to Sanuwave. It violated Rule 45(d) in that it sought documents from Mr. Schlechtweg that were exceedingly overly broad and unduly burdensome (including "all sales documents and contracts with Sanuwave" and "all correspondence with sales representatives"). And it violated the parties' Protective Order in that it did not include a copy of the Protective Order or Local Rule 5.6. ECF No. 46."

(Dkt. 60 at 10.)  Sanuwave seeks sanctions for these violations of Rule 45, as well as for

Cronin's counsel's conduct in "backdating" the Notice of Deposition and misrepresenting

that Cronin had not issued a subpoena to Schlechtweg on May 2, 2024, when Cronin had

in fact done so on April 30, 2024.  (*See id.* at 9-11.)  According to Sanuwave:

> Mr. Kaseorg's failure to comply with the Federal Rules of Civil Procedure
> when issuing third-party subpoenas is striking. Tipping the scale from
> striking to sanctionable, though, is Mr. Kaseorg's dishonesty aimed to
> conceal his actions. Mr. Kaseorg not only affirmatively represented, on
> May 2, 2024, that the subpoena had not yet been issued, despite it having
> been served the day prior, but he then issued a Notice of Deposition
> backdated to April 29, 2024, in an attempt to conceal the belated notice.
> Chambers Dec. Exs. 10-13. Mr. Kaseorg's deception enabled him to have
> conversations with Mr. Schlechtweg, Sanuwave's former CRO, prior to
> Sanuwave having the opportunity to represent him.

(Dkt. 60 at 11.)

Cronin's response is "Defendant provides a smattering of various minutia

regarding the subpoena of Jack Schlechtweg in an effort to overwhelm Plaintiff's counsel

with a litany of misunderstandings and nominal mistakes."  (Dkt. 86 at 23.)  Cronin

further argues that these mistakes have not "impacted the 'orderly and expeditious

disposition of cases' before this Court" and identifies several mistakes Sanuwave has

allegedly made.  (*Id.* (citing *Chambers*, 501 U.S. at 43).)

According to Cronin, the "misunderstandings and nominal mistakes" are as

follows.  Cronin's counsel says that he did not intentionally mislead Sanuwave's counsel

by answering "we have not" when she asked on May 2, 2024 "have you issued other

third-party subpoenas aside from the two that were noticed?"  (Dkt. 86 at 26-27.)  He

states that he believed this question "to refer to either Jack Schlechtweg and [another

former Sanuwave employee], which had been discussed earlier, or the two subpoenas issued to the Florida entities." (*Id.* at 15.)  This does not make any sense.  Sanuwave's counsel first specifically asked: "Third Party Depositions. Please confirm whether you have issued, or intend to issue, subpoenas for the depositions of Jack Schlechtweg and [another former Sanuwave employee]. We have received no notice of issuance of said subpoenas." (Dkt. 88-16, Ex. P at 4-6.)  She then asked in a subsequent email: "To be clear, have you issued other third-party subpoenas aside from the two that were noticed? If so, please provide those immediately." (*Id.* at 2-3.)  No reasonable person could have thought Sanuwave's counsel knew about the subpoenas to Schlechtweg and the other former Sanuwave employee based on this exchange.

This is clear because, as of May 2, 2024, Cronin had served copies of the subpoenas to the Florida entities on Sanuwave (Dkt. 86 at 12), but had not served copies of the subpoenas to Schlechtweg and the other former Sanuwave employees on Sanuwave.  Cronin's counsel could not reasonably think a reference to "the two that were noticed" referred to subpoenas Cronin had not served on Sanuwave.  Further, regardless of what Cronin's counsel thought, there is no apparent reason why Cronin sent Sanuwave a Notice of Deposition for Schlechtweg (apparently created on May 2, 2024) rather than the April 30 Subpoena.  Cronin's counsel said at the hearing that he told his paralegal to forward the "notice of subpoena" as the clearest way of answering the question.  That is not what happened.  Instead, Cronin served a Notice of Deposition without a copy of the April 30 Subpoena and without referencing the April 30 Subpoena.  Both Notices of Deposition were signed by Cronin's counsel.

Finally, counsel argued at the June 13 hearing that Cronin was not required to provide "the deposition notice" because it was not a document request. However, as discussed above, the April 30 Subpoena **did** contain a request for the production of documents. According to Cronin, it "erroneously included the same copied-over document request language from an earlier subpoena duces tecum that was served on the two Florida entities." (Dkt. 86 at 14.) But the subpoenas sent to the Florida entities were titled Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and issued out of the District of Minnesota. (Dkts. 88-14, Ex. N.) It is unclear to the Court how this copying error occurred, given the subpoenas were different types (the Florida subpoenas were titled for documents, the Schlechtweg subpoena was titled for testimony) and issued out of different district courts (District of Minnesota for the Florida subpoenas and the Eastern District of Virginia for the April 30 Subpoena). Counsel did not have a good explanation for how this error occurred during the June 13 hearing. He speculated that a drop-down menu on the subpoena form had not been updated from Virginia to Minnesota, but it was the earlier subpoenas that issued from the District of Minnesota, calling this explanation into question. Cronin's counsel had no explanation for how this copying error occurred given the subpoenas were two different types. Rather, Cronin's counsel reiterated that it was a mistake, and he should have taken a closer look at the April 30 Subpoena before signing it and sending it out.

Having considered all of the evidence and arguments of counsel, the Court concludes that the record does not support a conclusion that counsel for Cronin intentionally misled Sanuwave about the April 30 Subpoena to Schlechtweg or intended

to violate Rule 45.  However, counsel's lack of attention to the April 30 Subpoena and
the failure to read email correspondence from Sanuwave carefully enough to respond
accurately has certainly disrupted the orderly and expeditious handling of this
proceeding.  Moreover, there is no dispute that the April 30 Subpoena was served without
a copy of the Protective Order and Local Rule 5.6, thereby violating the Protective Order.
(*See* Dkt. 46 at 4 ¶ 4 ("A party serving a subpoena on a non-party must simultaneously
serve a copy of this protective order and of Local Rule 5.6.").)  The question is what
sanctions are appropriate for this conduct.

### D.    Appropriate Sanctions

Sanuwave requested an award of fees and costs under Rule 37(b)(2)(C) and a
monetary sanction under the Court's inherent authority for Cronin's violations of the
Protective Order and Rule 45.  (Dkt. 60 at 13.)  At the June 13 hearing, Sanuwave
requested monetary sanctions in the amount of $1,000 for each violation—$2,000 total.
Sanuwave also asked the Court to quash Cronin's more recent subpoena to Schlechtweg
(*id.* at 12), but that request is moot in view of the Court's June 13, 2024 denial of
Cronin's Motions filed on April 15, 2024 (*see* Dkt. 96).  For the reasons stated below, the
Court denies monetary sanctions under the Court's inherent authority, but imposes a non-
monetary sanction under the Court's inherent authority and awards reasonable attorney's
fees and costs under Rule 37(b)(2)(C).

Here, several facts weigh against a monetary sanction under the Court's inherent
authority.  First, after being alerted to the disclosure of the Attorney's Eyes Only
documents, counsel immediately told Cronin to return the documents and not to review

28

them and "Mr. Cronin confirmed that he no longer had access to the Contested Spreadsheets." (Dkt. 86 at 18.) Cronin has stated under penalty of perjury that he no longer has access to the Attorney's Eyes Only spreadsheets, did not save them, and did not send them to anyone else. (Dkt. 86-11 ¶¶ 5-7.)

Second, after Sanuwave notified counsel that the April 30 Subpoena violated Rule 45, Cronin's counsel notified Schlechtweg that he did not have to produce documents and issued a subpoena that complied with Rule 45 before Sanuwave filed this Motion. (*See* Dkt. 88-17 at 1; Dkt. 88-18.) And while Sanuwave states that Cronin's counsel had "several conversations" with Schlechtweg before he retained Sanuwave's counsel (Dkt. 61 at 11), it is difficult for the Court to find prejudice here when Sanuwave initially told Cronin to contact Schlechtweg through Sanuwave's counsel, then told Cronin's counsel on April 17, 2024 after he served a deposition notice that he would have to subpoena Schlechtweg, and undertook Schlechtweg's representation only after Cronin actually subpoenaed him. Nothing prevented Cronin's counsel from picking up the phone and speaking with Schlechtweg after April 17, 2024, regardless of whether Cronin ever issued a subpoena.[6] In sum, most of Sanuwave's prejudice is amorphous.

Third, the Court finds that an award of a monetary sanction is unlikely to deter (or cure) the conduct that causes the Court the most concern—which is Cronin's counsel's carelessness with respect to his obligations to deal fairly with opposing counsel and make

---

[6]     Sanuwave has not stated that it represented Schlechtweg at that time but simply declined to accept service of a subpoena, nor has it sought sanctions based on Cronin's counsel's direct contact with Schlechtweg.

accurate and truthful representations to the Court and his failure to abide by the Federal and Local Rules.  The Court is mindful that "[t]he sanction imposed must be fair and tailored to the issue raised by discovery order." *Card Tech.*, 249 F.R.D. at 571 (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982); *Keefer v. Provident Life and Accident Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000)).  Moreover, "[b]ecause of the potency of inherent powers, a court must exercise its inherent powers with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction." *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005) (internal quotations and citations omitted).

Here, the harm resulting from the offending conduct is as follows: in April and May 2024, Cronin's counsel provided Sanuwave's financial documents to Cronin in violation of the Protective Order and notwithstanding the fact that they were designated Attorney's Eyes Only under the Protective Order and produced with a cover email stating the production contained Attorney's Eyes Only information; served the April 30 Subpoena that violated Rule 45, apparently because Cronin's counsel did not review the April 30 Subpoena carefully enough to notice multiple errors, and also violated the Protective Order because it was not served with a copy of the Protective Order and Local Rule 5.6; failed to provide notice of the April 30 Subpoena to Sanuwave's counsel, apparently because counsel did not notice when reviewing the April 30 Subpoena that it requested documents; and incorrectly told Sanuwave's counsel that Cronin had not subpoenaed Schlechtweg in response to a direct question from Sanuwave's counsel,

apparently based on a careless reading of email correspondence. Then, at the June 13 hearing, Cronin's counsel blamed his failure to file certain papers in support of Cronin's arguments on an email sent by Sanuwave's counsel—which, as it turned out, did not say what Cronin's counsel told the Court it said. This conduct disrupts and harms the judicial process. At this point, the Court cannot trust that Cronin's counsel will take the necessary care to comply with the Court's Orders and the Federal and Local Rules or that counsel will ensure that statements made to opposing counsel and the Court are accurate.[7]

The Court recognizes that the practice of law can be difficult and demanding. But at some point, conduct crosses the line from simply making a mistake (or two) to carelessness and a lack of regard for what is required by the Rules and the Court's Orders. Cronin's counsel's conduct here is at that point. To remedy these issues, the Court orders the following two sanctions. First, pursuant to the Court's inherent authority, the Court orders that Nichols Kaster PLLP, which moved for the pro hac vice admission of Cronin's counsel, must participate in the preparation and presentation of all aspects of this case going forward.[8] This participation includes reviewing all correspondence between counsel, participation in all meet-and-confers, reviewing all of

---

[7]     Although the Court does not rely on the fact that Cronin's counsel missed the deadline for filing papers in support of his Motions as a basis for sanctions, the Court notes that the reasons for that missed deadline are unclear to the Court and appear to be a failure to read or understand Local Rule 7.1(b)(1) and the Pretrial Scheduling Order.

[8]     Local Rule 83.5 was recently amended to no longer require a member of this Court's bar who moves for the admission pro hac vice of a nonresident counsel to participate in the presentation and preparation of the case. D. Minn. LR 83.5, 2023 Advisory Committee's Notes. But that amendment contemplates that a judge in

Cronin's Court filings before they are made, and appearance at all Court proceedings (telephonic, by video, or in person).  The Court trusts that local counsel's participation will ensure that this matter is litigated in a manner that complies with the Federal and Local Rules and that "secure[s] the just, speedy, and inexpensive determination of" this action and its proceedings.  *See* Fed. R. Civ. P. 1.

Second, pursuant to Rule 37(b)(2)(C), the Court orders that Cronin's counsel pay Sanuwave's reasonable attorneys' fees and costs associated with the Motion for Discovery Sanctions (Dkt. 58).  As described in Sections II.B & II.C, Cronin's counsel's failures were not substantially justified, and there are no other circumstances that make this award of expenses unjust.  *See* Fed. R. Civ. P. 37(b)(2)(C); *see also Card Tech.*, 249 F.R.D. at 570 (willfulness not required for Rule 37(b)(2)(C) award of reasonable expenses).  Further, since it is Cronin's counsel who engaged in or caused the sanctionable conduct, the Court orders that Cronin's counsel—not Cronin personally—must pay those reasonable expenses.  *See* Fed. R. Civ. P. 37(b)(2)(C) ("[T]he court must order the disobedient party, **the attorney advising that party**, or both to pay the reasonable expenses, including attorney's fees, caused by the failure.") (emphasis added).  Sanuwave must serve a statement of those reasonable fees and costs on Cronin no later than August 6, 2024.  If Cronin objects to the amount of fees or costs, he must file his objections no later than August 13, 2024.  Sanuwave may file a response to any such objections no later than 7 days after Cronin files the objections.  The Court will decide

---

a particular case may order that a member of this Court's bar must participate in that case to a greater extent.  *Id.*

any dispute over the reasonable fees and costs based on the papers unless it determines a hearing is necessary.

Consequently, the Court grants Sanuwave's Motion for Discovery Sanctions (Dkt. 58) insofar as the Court requires local counsel Nichols Kaster's participation in all aspects of the presentation and preparation of Cronin's case going forward and grants an award of fees and costs, but denies it insofar as it seeks a monetary sanction under the Court's inherent authority. Cronin and his attorneys are cautioned, however, that future violations of the Rules or the Court's Orders may well result in monetary sanctions.

### III.  ORDER

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.  Defendant Sanuwave Health, Inc.'s Motion for Discovery Sanctions (Dkt. 58) is **GRANTED in part** and **DENIED in part**;

2.  Nichols Kaster PLLP must participate in the preparation and presentation of **all** aspects of Cronin's case going forward;

3.  Matthias Kaseorg of Pierce Jewett, PLLC must pay Sanuwave's reasonable attorneys' fees and costs associated with the Motion for Discovery Sanctions (Dkt. 58).

4.  Sanuwave must serve a statement of those reasonable attorneys' fees and costs on Cronin no later than **August 6, 2024**. If Cronin objects to the amount of fees or costs, he must file his objections no later than **August 13, 2024**. Sanuwave may file a response to any such objections no later than 7 days after Cronin files the objections. The

Court will decide any dispute over the reasonable fees and costs based on the papers unless it determines a hearing is necessary.


Date:   July 24, 2024                         *s/Elizabeth Cowan Wright*
                                              ELIZABETH COWAN WRIGHT
                                              United States Magistrate Judge