UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sean Cronin,

                Plaintiff,

v.

Sanuwave Health, Inc.,

                Defendant.

Case No. 23-cv-1295 (SRN/ECW)

**ORDER**

This matter comes before the Court on Plaintiff Sean Cronin's Second Motion to Compel (Dkt. 108). For the reasons stated below, the Motion is denied.

## I.     BACKGROUND

Sean Cronin became a Plaintiff to this lawsuit on July 5, 2023, via Amended Complaint, alleging wage theft under Maine law and breach of contract. (Dkt. 12 at 23-25.)[1] On October 16, 2023, the Court issued a Pretrial Scheduling Order setting the following relevant deadlines: fact discovery had to be commenced in time to be completed on or before May 1, 2024 and "all non-dispositive motions and supporting documents" relating to fact discovery had to be filed and served on or before May 15, 2024. (Dkt. 32 at 3, 5.) On April 30, 2024, the Court extended the deadline to complete fact depositions from May 1, 2024 until May 15, 2024, based on a stipulation filed by Cronin and Defendant Sanuwave Health, Inc ("Sanuwave"). (Dkts. 52, 53.)

---

[1]     Unless otherwise noted, page number citations to materials filed on the docket are citations to the CM/ECF pagination.

Earlier, on February 9, 2024, Cronin served a request for production seeking "[a]ll documents relating to Sanuwave's sales from June of 2022 through May of 2023, including but not limited to all contracts supporting such sales." (Dkt. 82 at 10 (Cronin's Request for Production of Documents No. 18)).) Sanuwave objected to this discovery request. (Dkt. 82 at 35-36; Dkt. 116-1, Ex. A at 2.) During conversations between counsel over the next few months, Cronin's counsel explained he was seeking documents for purposes of identifying so-called "misaligned" sales—that is, sales that Cronin claims were actually W2 sales (commissionable to Cronin) that Sanuwave characterized as 1099 sales (not commissionable to Cronin)—and narrowed the scope of the request to contracts for sales that Sanuwave claimed Cronin was not entitled to commissions for, as well as "emails back and forth sharing, discussing, or regarding those sales/contracts," including specifically identifying at least two accounts. (Dkt. 116-1, Ex. A at 2-5.)

On April 22, 2024, counsel for Sanuwave replied to Cronin's counsel, stating: "Sanwuave will not provide contracts and emails for over 2,000 sales, as that is overly broad, unduly burdensome, and not proportional to the needs of this case. If there are certain sales you would like to identify that you are concerned about, we can discuss that compromise." (*Id.* at 5.)

During Cronin's deposition on April 30, 2024, when asked about misaligned sales, Cronin testified that when he was Senior National Sales Director of Wound Care, he had access to the records necessary to identify misaligned sales each month, that such misaligned sales were rare, and that he could correct any identified misalignments at the

2

time if needed.  (Dkt. 116-2, Ex. B at 91:9-25, 92:1-25, 93:1-8).)[2]  Later, after Cronin took a break to study his records, Cronin identified a list of accounts for October 2022, November 2022, December 2022, and January 2022 as "misaligned."  (*Id.* at 227:1-25, 230:12-25, 242-249:1-25.)  On May 2, 2024, following the May 1, 2024 close of discovery, Cronin's counsel sent a letter demanding underlying documents for the "misaligned" sales identified during Cronin's deposition.[3]  (Dkt. 114 at 3-4; Dkt. 66 at 14.)  Sanuwave did not provide Cronin with this information.  (Dkt. 114 at 4.)

On May 15, 2024, Cronin filed his first Motion to Compel, Extend Discovery Deadlines, and for Sanctions ("First Motion to Compel") (Dkt. 64).  Through his First Motion to Compel, Cronin sought (among other things) "to review the underlying account information, contracts, and related documents for sales [he had identified as misaligned] to confirm that the sales are properly accounted for and that Defendant is not miscategorizing W2 sales as 1099 sales (and therefore excluding those sales from Mr. Cronin's compensation)," and identified those documents as responsive to Request No. 18.  (Dkt. 66 at 13-14; *see also* Dkt. 64 (First Motion to Compel seeking an order compelling "production by Defendant Sanuwave Health, Inc. of full, unredacted, non-

---

[2]   Citations to transcripts are in page:line format.

[3]   Sanuwave cited to Exhibit C to the Declaration of Terran Chambers in support of this statement and described it as a May 2, 2024 letter.  (Dkt. 114 at 3.)  Exhibit C is a letter from Cronin's counsel to Sanuwave's counsel showing a date of July 18, 2024 and described by Sanuwave's counsel as correspondence sent on July 18, 2024.  (Dkt. 116-3, Ex. C.)  It does not appear that either party filed the May 2, 2024 letter.

3

AEO-designated documents regarding sales from November 2022 through April 2023") (footnote omitted).)

On June 13, 2024, the Court heard argument on the First Motion to Compel. (Dkt. 96 (Minute Entry).) At the conclusion of the June 13 hearing, the Court issued an Oral Order denying the request to compel production of full, unredacted non-Attorney's Eyes Only ("AEO") designated documents regarding sales from November 2022 through April 2023, except insofar as Sanuwave had agreed to produce a data set with W2 and 1099 sales for February, March, and April 2023 with the sales representative names redacted and that were designated AEO, and insofar as Cronin was permitted to review—with counsel present—the redacted AEO copies together, either in person or by screen sharing. The Court denied Cronin's request that the Court order such documents downward-designated from AEO to Confidential and denied Cronin's request for documents relating to 1099 sales, including contracts and communications, because they were not proportionate to the needs of the case. However, as to the sales encompassed by the February to April 2023 data sets, the Court ordered that Cronin could renew his request for relief with respect to the underlying documents for purposes of misalignment and his request for downward designation of those documents after his review with counsel of the February to April 2023 data sets.

These rulings were summarized in a Minute Entry and clarified (in response to a letter from Cronin) in a subsequent Order issued on July 1, 2024. (Dkts. 66, 101, 102.) In particular, in response to a request from Cronin regarding data sets from November 2022 to January 2023, the Court stated:

4

> The oral Order regarding Mr. Cronin's viewing did not encompass data sets from November 2022 to January 2023, and this limitation was not objected to or raised as a concern by Plaintiff's counsel at the June 13 hearing. That said, it is unclear to the Court why Sanuwave would treat the November 2022 to January 2023 data sets differently from the February to April 2023 data sets for purposes of Mr. Cronin's review with counsel. The Court strongly encourages the parties to reach agreement **regarding Mr. Cronin's ability to review** the previously produced November 2022 to January 2023 data sets with counsel. But if they cannot, Mr. Cronin may seek relief in this regard by motion on July 12, 2024, and Sanuwave may respond no later than July 19, 2024.

(Dkt. 102 at 2 (emphasis added).)

Of note, the Minute Entry memorializing the Court's June 13 Oral Order also stated: "Mr. Cronin may not raise any new requests for relief in any such motion that were not raised in the Motion at Docket 64 or do not arise from the anticipated Sanuwave production." (Dkt. 66.) The Court did not authorize Cronin to file a renewed motion seeking the underlying documents for November 2022 to January 2023.

Cronin filed the instant Motion—his Second Motion to Compel—on July 12, 2024. (Dkt. 108.) On July 18, 2024, Cronin's counsel wrote a letter to Sanuwave's demanding, "the contract(s) for the sale at issue, any correspondence on record from Sanuwave employees/contractors regarding the sale at issue. . . and any correspondences from the clients at issue regarding the" alleged misaligned sales between October 2022 through January 2023. (Dkt. 116-3 at 2-7.) Sanuwave filed a brief in opposition to the Motion on July 19, 2024. (Dkt. 114.) The Court has determined that oral argument is not necessary to decide the issues raised by Cronin, making the Motion ripe for decision. (*See* Dkt. 102 at 2.)

## II.     LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. *See* Fed. R. Civ. P. 26. Under Rule 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

While Rule 26 contemplates a liberal scope of discovery, this Court "possess[es] considerable discretion in determining the need for, and form of, discovery . . . ." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015) (citations omitted).

As stated in Rule 26, information sought in discovery must be relevant. The Eighth Circuit has held that the party seeking discovery has the burden of showing relevance before the requested information is produced. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "[T]he standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery)." *Id*. However, this common legal principle "should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open

6

wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.*

Further, not only must information sought in discovery be relevant to a claim or defense, it must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "In determining proportionality, courts consider numerous factors, including 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Beseke v. Equifax Info. Servs., LLC*, No. 17-cv-4971-DWF-KMM, 2018 WL 6040016, at *3 (D. Minn. Oct. 18, 2018) (quoting Fed. R. Civ. P. 26(b)(1)). To this end, a court on a motion or on its own "must" limit discovery when it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or if the discovery is outside of the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

In accordance with Federal Rule of Civil Procedure 37, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). And "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

### III.     ANALYSIS

Cronin seeks an order from the Court compelling Sanuwave to produce sales documents relating to two sets of transactions, one from December 2022 and the other from February through April 2023. (Dkt. 108.) The documents for these sets of transactions include the following:

> a. the contracts for such transactions;
> b. documents demonstrating any oversight / management of the accounts for these transactions;
> c. documents showing when the entities were moved from W2 to 1099 (or vice versa);
> d. correspondences by the managing 1099 or account representative W2 notifying either the purchaser or internal Sanuwave employees of any change from W2 to 1099 (or vice versa);
> e. documents demonstrating any change in payment/commission terms associated with the change and/or why the change from W2 to 1099 occurred; and
> f. records showing how much in commissions the past/current 1099 entities (or any other person/entity) earned for the sales identified on the sheets.

(Dkt. 108 at 1-2.) Cronin also seeks to reopen Sanuwave's Rule 30(b)(6) corporate representative deposition "via videoconference for no more than two hours for the limited purpose of asking about the particular transactions" for which he seeks documents by this Motion. (*Id*. at 2.)

Sanuwave opposes the Motion, arguing that the request for documents from December 2022 sales has already been denied and should be denied again (Dkt. 114 at 1-6); the request for documents from February to April 2023 also should be denied because Cronin was not entitled to commissions during this time and because the request is a fishing expedition (*id*. at 6-11); and Cronin's request to reopen the corporate representative's deposition should be denied because Cronin has already exhausted his 7

hours for his Rule 30(b)(6) of Sanuwave and the Court did not authorize him to seek additional time in the Orders authorizing this Motion (*id.* at 11-12). Sanuwave also seeks its fees and costs incurred in opposing the Motion insofar as it seeks documents pertaining to December 2022 sales and to reopen Sanuwave's Rule 30(b)(6) deposition. (*Id.* at 12.) The Court addresses each argument in turn.

A.     **December 2022 Sales**

Cronin seeks sales documents related to a set of transactions from December 2022. (Dkt. 108 at 1.) As a starting point, it is somewhat difficult to ascertain which December 2022 transactions are at issue. The Motion refers to "the set of transactions in Exhibit N (December of 2022)." (*Id.*) However, Cronin did not file an Exhibit N. He filed Exhibits G and H attached to a Declaration of Matthias Kaseorg. (Dkts. 111 (Kaseorg Declaration), 111-1 (Exhibits G and H).) He also filed Exhibits A-F and I-M attached to a second Declaration of Matthias Kaseorg. (Dkts. 112 (Second Kaseorg Declaration), 112-1 to 11 (Exhibits A-F and I-M).) It appears Cronin may have meant Exhibit M, as that Exhibit is what he identifies in his brief (compared to the Motion itself). (*See* Dkt. 109 at 1.). Cronin describes Exhibit M as "a demonstrative exhibit listing misaligned accounts from December 2022 that were missing from Exhibit L," where Exhibit L is described as a document "received in discovery from Defendant on April 29, 2024" (and appears to be a listing of sales in December 2022 produced by Sanuwave). (Dkt. 112 ¶¶ 11-12; Dkt. 112-10 (Exhibit L).)

Cronin explains that he created Exhibit M by comparing "data from Salesforce in Exhibit J" with Sanuwave's "calculation of commissionable transactions from Netsuite at

9

Exhibit L." (Dkt. 109 ¶ 18.) The problem with this explanation is that Exhibit J—produced by Cronin—is a listing of January 2023 transactions (although Cronin describes them as "sales and commissions for January of 2022"). (Dkt. 112-8; Dkt. 112 ¶ 9.) In other words, Cronin appears to have identified the December 2022 sales he claims are commissionable to him by comparing January 2023 data from Salesforce (Ex. J) to December 2022 data produced by Sanuwave on April 29, 2024 (Ex. L). The Court does not understand how Cronin could create a list of allegedly "misaligned" sales for December 2022 by comparing these spreadsheets. Sanuwave noted this issue in its opposition and postulated that perhaps Cronin had meant to refer to Exhibit I (a document produced by Cronin showing total 2022 sales from Salesforce data Cronin took when he left Sanuwave). (Dkt. 114 at 5 & n.3.) It is not clear to the Court that Cronin did mean Exhibit I instead of Exhibit J, and he did not file an errata correcting his brief. But it does not matter because the Court denies the Motion as to the December 2022 data for other reasons.

First, as the Court made clear on July 1, 2024, it denied Cronin's request for additional sales-related documents for the November 2022 to January 2023 sales in its June 13, 2024 Oral Order. (Dkt. 102 at 3-4 (noting Cronin's ability to review with counsel documents from February to April 2023, stating: "Sanuwave also correctly asserts that the Court denied Plaintiff's motion insofar as it sought the production of other sales-related documents. The oral Order regarding Mr. Cronin's viewing did not encompass data sets from November 2022 to January 2023, and this limitation was not objected to or raised as a concern by Plaintiff's counsel at the June 13 hearing." and

10

advising the parties to reach agreement as to "**Mr. Cronin's ability to review the previously produced November 2022 to January 2023 data sets** with counsel.") (emphasis added).)  While the Court permitted Cronin to seek relief with respect to his ability to **review** with counsel the November 2022 to January 2023 data sets, it did not allow Cronin to seek relief with respect to production of the underlying documents for that period.  Cronin's brief stated he "understood" the Court's June 13, 2024 Oral Order "to mean that Plaintiff could renew its document requests if additional relevant documents are still outstanding after Sanuwave's production." (Dkt. 109 at 1 n.1.)  This "understanding" is completely at odds with the Court's limitation of issues Cronin could raise to those "aris[ing] from the anticipated Sanuwave production." (Dkt. 96.)  The Court has already denied Cronin's request for relief as to sales during the November 2022 to January 2023 period.  The Court's decision to grant Cronin narrowly tailored relief in the form of the production of data sets for February to April 2023 was not an invitation for Cronin to file a Motion revisiting the Court's decision as to November 2022 to January 2023 sales.  The fact that this request for December 2022 documents exceeds the scope of what the Court authorized is sufficient reason, standing alone, to deny Cronin's request for relief as to December 2022.

Second, when Cronin sought permission to review the November 2022 to January 2023 sales data sets with counsel, he represented to Sanuwave—twice—that he would not be seeking additional discovery based on those data sets.  On June 25, 2024, Cronin's counsel stated:

11

> I'm happy to have a call tomorrow if you need, but an email answer is fine. As I understand, Sanuwave's position is that Mr. Cronin may only raise new discovery motions to request additional documents for February, March, and April of 2023 pursuant to the order. I understand that position.
>
> I'm asking if Mr. Cronin may review the November-January AEO spreadsheets with me in person or via screenshare so we can potentially work towards a final stipulation on sales and/or prepare our damages estimate for trial. **We're not asking for additional discovery requests regarding sales documents for November-January.**

(Dkt. 116-4 at 2 (emphasis added).)

The next day, Cronin's counsel again stated: "I just need to know if Sean and I can review the November-January AEO spreadsheets next week when we have our in-person / Zoom review. **We won't be seeking additional discovery based on the November-January AEO spreadsheets**." (*Id.* (emphasis added).)

But now, Cronin comes to the Court seeking the very thing he said he would not ask for—additional discovery for November 2022 to January 2023. "It is essential to our system of justice that lawyers and litigants, above all, abide by their agreements and live up to their own expectations." *N. Am. Sci. Assocs., LLC v. Conforti*, No. 24-CV-287 (JWB/ECW), 2024 WL 3159494, at *6 (D. Minn. June 25, 2024) (quoting *In re Bristol-Myers Squibb Sec. Litig.*, 205 F.R.D. 437, 444 (D.N.J. 2002)). Cronin never acknowledges his representations to Sanuwave that he would not seek this additional discovery or explains why he should not be held to those representations. The Court declines to order additional discovery as to December 2022 under these circumstances, as doing so would punish Sanuwave for agreeing to do something the Court had not ordered Sanuwave to do and reward Cronin for going back on his representations. This is a

12

second (and independent) reason to deny the Motion insofar as it seeks additional discovery as to the December 2022 transactions.

**B.     February to April 2023 Sales**

The Court next turns to Cronin's request for documents related to the February to April 2023 sales data sets that Sanuwave produced pursuant to the Court's June 13, 2024 Order.  Cronin argues that 58 accounts during this period were previously classified in 2022 as W2s but had been reclassified as 1099.  (Dkt. 109 ¶¶ 5-6.)  Cronin's theory is that Sanuwave reclassified the accounts associated with those transactions from W2 to 1099 to avoid paying him commissions, because he was eligible for commissions on W2 sales but "Sanuwave alleges that he would not be eligible for commission" on 1099 sales.[4]  (*Id.* ¶ 2.)  This is not a new theory in the case, as the Amended Complaint alleges that certain sales totaling $220,000 in December 2022 should have been credited to former Plaintiff Timothy Fitzgerald but were improperly credited to a "Sales Force Administrator" who had resigned before December 2022.  (Dkt. 12 ¶¶ 60-62.)  The Motion describes these paragraphs as allegations that Sanuwave regularly wrongfully reassigned accounts to "circumvent" its payment obligations to employees and argues

---

[4]     Notwithstanding Cronin's use of "alleges," the Court does not understand him to seriously be arguing that he was entitled to commissions on 1099 sales for February to April 2023, given his previous admission that he was not entitled to commissions on 1099 sales after November 2022.  (*See* Dkt. 66 at 2 n.3 ("Mr. Cronin was, at some point prior to November 2022, also entitled to commissions on sales procured via 1099 contractors.  This was modified, although Mr. Cronin alleges that certain W2 sales were inappropriately misclassified as 1099 sales, leading to certain Sanuwave calculations being underinclusive.").)

13

that these particular December 2022 sales should have been included in Cronin's commissionable sales, but were not. (*Id.* ¶¶ 14, 19.)

Sanuwave objects to the requested discovery for several reasons, including because it is a prohibited "fishing expedition." (Dkt. 114 at 8-9; *see generally id.* at 6-11 (all arguments opposing February to April 2023 discovery).) Sanuwave also argues that Cronin has not made a threshold showing of relevance given there is a February 3, 2023 email informing Cronin he is no longer entitled to commissions as of February 1, 2023 (Dkt. 116-5, Ex. E (February 3, 2023 email stating it was "the official communication for documentation purpose" of Cronin's decrease in "manager commission" to 0% as of February 1, 2023); Dkt. 117, Ex. B at 176:5-16), and Cronin's own statements that he had no agreement with Sanuwave for commissions after January 2023 (Dkt. 111-1, Ex. H at 11-12 (May 5, 2023 email from Cronin stating: "February 2023 - the entire month went by without any communication regarding my 'new role.' To be clear, I have not received, signed or verbally agreed to any updated compensation plan."); Dkt. 117, Ex. B at 203:12-206:20 (testimony regarding May 5, 2023 email)).

Taking a step back, the dispute regarding the documents underlying the December 2022 and February to April 2023 transactions is whether the accounts were reclassified from W2 to 1099 accounts to avoid paying Cronin commissions. Cronin's brief presents attorney argument for why he thinks these reclassifications would not make sense. (Dkt. 109 ¶¶ 7-11.) But the only evidence he cites as to Sanuwave's motivation is an excerpt from the deposition of Kevin Richardson (who appears to be a current or former Sanuwave employee), page 69, lines 11-15. (*Id.* ¶ 13 (citing "Richardson Deposition

14

69:11-15, attached as Exhibit G").)  The Court has reviewed Exhibit G, which is an excerpt of the Richardson Deposition but does not contain the language quoted by Cronin in his brief.  (*Compare* Dkt. 111-1, Ex. G at 69:11-15 (discussing involvement of Sanuwave employees with account at issue), *with* Dkt. 109 ¶ 13 (reciting testimony regarding reassignment of accounts to "other salespeople" or in-house).)  The Court is reluctant to rely on an unsupported excerpt of a deposition in a brief when ordering discovery.  Moreover, Cronin's argument about this excerpt is somewhat inaccurate, as he argues that the "proper procedure" was to reclassify accounts transitioning from W2 to "in-house" but ignores the testimony that they may also have "reassigned to other salespeople."  (Dkt. 109 ¶¶ 12-13.)  The significance of this testimony is generally unclear.

   Cronin also cites an alleged shortfall in commissions owed him for December 2022 based on documents either in his possession (Exhibits I-K) or produced by Sanuwave on April 29, 2024 (Exhibit L) as evidence that the accounts were reclassified from W2 (or certain specific commissionable 1099 entities) to non-commissionable 1099 accounts.  (Dkt. 109 ¶¶ 15-17, 19.)  Finally, Cronin acknowledges that the February to April 2023 data sets also show accounts that were reclassified from 1099s to W2s—a change that would **increase** his commissions under this theory (presumably undermining his theory)—but claims those changes "may be used as evidence that the moved accounts were incorrectly classified as 1099 sales in previous months." (*Id.* ¶ 20.)  In other words, according to Cronin, no matter how Sanuwave reclassified accounts from February to April 2023 and whether that reclassification increased or decreased his commissions, the

15

reclassification is evidence that Sanuwave reclassified certain accounts to decrease the commissions owed to Cronin.

Against this backdrop, the Court considers the proportionality of the documents Cronin requests. To begin, the Court is troubled that even after discovery has closed, Cronin has not identified any evidence (or articulated any theory in the Motion) supporting his contention that he is entitled to commissions for Wound Care sales of any kind after January 2023. If he is not entitled to commissions for February to April 2023, the discovery he seeks appears to be irrelevant. Cronin's argument that the reclassification of accounts during the February to April 2023 time frame would show Sanuwave took that action to deprive him of commissions as to November 2022 to January 2023 is too attenuated to justify this type of discovery. Indeed, the Court is at a loss as to why Sanuwave would take this reclassification action for February to April 2023 transactions given its documented contemporaneous belief that Cronin was not entitled to any commissions after January 2023.

Even if Cronin has made a threshold showing of relevance, the Court finds that the discovery he seeks—extensive documentation regarding each of the 58 accounts and underlying transactions—is disproportionate to the needs of the case. Cronin's argument is based almost entirely on speculation. He has asserted misclassification since the Amended Complaint was filed on July 3, 2023. (Dkt. 12 ¶¶ 60-62.) Cronin had a list of allegedly misaligned accounts for October 2022 to January 2023 as of his deposition on April 30, 2024. (Dkt. 117 at 243:15-249:19.) But the fact of reclassification alone does not support a conclusion that Sanuwave took this action to deprive Cronin of

commissions. And Cronin apparently did not seek or obtain any testimony from any Sanuwave employee that would support his theory that Sanuwave reclassified accounts to deprive him of commissions. For example, he cites no testimony relevant to the December 2022 sales referenced in the July 3, 2023 Amended Complaint that he now claims were reclassified to deprive him of commissions, even though he plainly had supporting documentation. (*See* Dkt. 109 ¶19.) Although Cronin was deposed on April 30, 2024, over two months before he filed this Motion and claims his testimony can support the allegations in this Motion (*see* Dkt. 109 at 3 n.2), he offers no testimony from his deposition or a declaration to do so. He offers no declarations or testimony from former co-Plaintiffs Timothy Fitzgerald and John Garrettson, even though he claims they also can support the misaligned sales. (*See id.*) His own Motion basically admits that he has no evidence to support his allegation that Sanuwave reclassified these accounts from W2 to 1099 for the purpose of depriving him of commissions. (Dkt. 109 ¶ 3 (stating discovery is sought to determine "whether" Sanuwave moved these accounts "nominally"), ¶ 4 ("If this has occurred, Plaintiff intends to argue these accounts are misaligned . . .").) In sum, Cronin is asking for the underlying documents for the February to April 2023 transactions based on no more than what he offered—and the Court found inadequate—on June 13, 2024 to show proportionality when he requested the same type of documents for November 2022 to January 2023.

     The Court understands that Cronin is asking for documents to determine if his allegations are true. Were these documents sought earlier in this case, the Court might take a different view as to the lack of evidence supporting this theory. But Cronin had

17

the opportunity to inquire about the November 2022 to January 2023 accounts during depositions and the opportunity to obtain supporting statements from himself and his former co-Plaintiffs, yet still cites nothing to support this theory. The absence of any evidence at this late stage in the case supporting the conclusion that Sanuwave reclassified accounts to deprive Cronin of commissions for transactions that Cronin has known about for months suggests that the documents he seeks are of little likely benefit. The Court will not order extensive document discovery based on attorney argument, a tangentially relevant and unsupported excerpt from a deposition, and the fact that some accounts were reclassified from W2 to 1099 (where others were reclassified from 1099 to W2 during the same time period) with the hope that the discovery might support the conclusion that Sanuwave reclassified these accounts to deprive Cronin of commissions. Simply put, the burden and expense of the documents he seeks outweighs their likely benefit. *See* Fed. R. Civ. P. 26(b)(1). The Court denies the Motion insofar as it seeks documents for the February to April 2023 time frame.

**C.     Request to Re-Open Sanuwave's Deposition**

Cronin asks the Court to order Sanuwave to produce a corporate representative for 2 hours of deposition regarding the transactions he identified for December 2022 and February through April 2023. (Dkt. 109 ¶ 24.) This request is denied for multiple independent reasons. The request exceeds the scope of what was authorized by the Court's June 13, 2024 Oral Order—which Cronin fails to acknowledge in his Motion. It is also denied because Cronin has not explained why he could not (or did not) ask Sanuwave questions about December 2022 transactions based on the documents he had

18

before discovery closed and the accounts he identified as misaligned before he deposed Sanuwave witnesses. Finally, it is denied as moot because the Court denies Cronin's requests for additional discovery as to December 2022 and February to April 2023.

### D. Award of Fees and Costs

Sanuwave seeks, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), an award of attorney's fees and costs incurred in responding to the Motion insofar as it "violates the Court's Order by seeking documents pertaining to December 2022 sales and seeking to reopen Sanuwave's 30(b)(6) deposition." (Dkt. 114 at 12.) Under Rule 37(b)(2)(C), when a party fails to obey a discovery order, "[i]nstead of or in addition to" sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The Court agrees that Cronin's request for additional deposition time and the December 2022 documents violates the Court's Order limiting this Motion to issues arising from Sanuwave's production of the February to April 2023 data sets. But the authorized portions of Cronin's motion (as to February to April 2023) overlap with the unauthorized request for December 2022 documents enough that it would be difficult to parse out the fees and costs associated with the December 2022 documents. And Cronin's request for 2 hours of deposition time is a sufficiently small part of the Motion that awarding fees and costs would likely cause the parties to incur additional expenses in quantifying the amount attributable to those paragraphs that would exceed the costs

19

associated in responding to request for deposition. The Court declines to award attorney's fees and costs to Sanuwave as these circumstances would make an award of expenses unjust. However, Cronin should not take this decision as an invitation to continue violating the Court's Orders.

### IV.     ORDER

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Plaintiff Sean Cronin's Second Motion to Compel (Dkt. 108) is **DENIED**; and

2. Defendant Sanuwave Health, Inc.'s request for an award of Rule 37(b)(2)(C) fees and costs (Dkt. 114) is **DENIED**.

Date:  September 3, 2024           *s/Elizabeth Cowan Wright*
                                    ELIZABETH COWAN WRIGHT
                                    United States Magistrate Judge

20